FILED
2015 Mar-20  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RICHARD WILLIAMS ANDREWS, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No.: 5:12-cv-00088-WMA-SGC |
| | ) |
| PATRICIA HOOD[1], Warden; ATTORNEY GENERAL FOR THE STATE OF ALABAMA, | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

On August 12, 2008, a jury convicted Richard Andrews ("Petitioner") of one count of first-degree sodomy in violation of Alabama Code § 13A-6-63, one count of second-degree sodomy in violation of Alabama Code § 13A-6-64, and one count of first-degree sexual abuse in violation of Alabama Code § 13A-6-66.  (Doc. 6-1 at 8).  After unsuccessfully challenging his conviction in the state courts, both on direct appeal and through a Rule 32 petition, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") in this federal district court.  This Petition raises numerous claims for relief that can generally be broken into four categories of claims: ineffective assistance of trial counsel claims, trial court error claims, prosecutorial misconduct claims, and ineffective assistance of appellate counsel claims.

For the reasons that follow, the Petition is due to be denied, and this case is due to be dismissed with prejudice.

---

[1]  Petitioner originally named Louis Boyd as a respondent in his capacity as the Warden of Draper Correctional Facility, where Petitioner is imprisoned.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); Rule 2(a), Rules Governing § 2254 Cases.  Since the filing of the petition, Boyd has been succeeded in that position by Patricia Hood. http://www.doc.state.al.us/facility.aspx?loc=26.  Accordingly, Hood is due to be substituted for Boyd.  *See* Fed. R. Civ. P. 25(d).

I.      **FACTS AND PROCEDURAL HISTORY**

In the fall of 2007, Petitioner was indicted on charges related to the alleged sexual abuse of his son M.A.[2]  (Doc. 6-1 at 18).  After a jury trial, Petitioner was found guilty on all counts. The facts that follow are gleaned from the testimony during trial and the allegations contained in the Petition.  At the outset, the court notes Petitioner denies any inappropriate contact with his son occurred.

M.A. testified that when he was 10 years old Petitioner "was teaching [him] about the birds and bees." (Doc. 6-2 at 55).  M.A. testified this discussion about sex took place over a 3-day period and that during those days Petitioner engaged in numerous sexual activities with him. M.A. testified Petitioner masturbated and made M.A. touch his penis.  M.A. said Petitioner touched his penis, engaged in oral sex with him and penetrated him anally.  M.A. testified Petitioner continued to abuse him sexually for the next 5 years until he was 15 years old.  During that time, M.A. performed oral sex on his father approximately 500 times, and his father engaged in anal sex with him 400-500 times.  M.A. further testified he could not state how many times his father performed oral sex on him but that it was "a lot."  M.A. testified when he was 15 years old he told his father he would call the police if his father did not stop sexually abusing him.  (Doc. 6-11 at 2-3).

In September of 2006, M.A. told his girlfriend about the abuse, when he blurted it out during an argument.  (Doc. 6-4 at 96-97).  His girlfriend later told her mother about the abuse, and her mother contacted a therapist, who was required to notify the police.  (Doc. 6-28 at 40-41).  M.A. testified that a police officer, Lt. Terry White, and an employee from the Department of Human Resources (DHR) came to his school to speak with him.  (Doc. 6-11 at 3).  During this

---

[2] Due to the sensitive nature of the underlying events in this case, the court will refer to the victim by his initials only.

meeting at the school, M.A. told Lt. White and the DHR employee about the abuse he had endured. (Doc. 6-2 at 76).

Lt. White is an investigator in the Sex Crimes Unit of the Decatur Police Department. (Doc. 6-11 at 5). He testified he had been contacted by a DHR employee about allegations concerning M.A. and Petitioner. Lt. White spoke with M.A. at his high school in May of 2007. (*Id.* at 5-6). Lt. White testified M.A. agreed to use his cellular telephone to place a call directly to Petitioner and allowed Lt. White to record the phone call. (Doc. 6-28 at 70-72). At the time this recorded conversation took place M.A. was under the age of 19 and, thus, was a minor.

Prior to trial, M.A. met with defense counsel on two separate occasions. During those meetings, M.A. informed defense counsel he had not been sexually abused and signed an affidavit stating as much. (Doc. 6-3 at 6-9). M.A. testified that the weekend before trial, his father told him the state might drop the charges if M.A. did not show up to testify. His parents gave him money and a debit card, which M.A. used to travel out of state for the first day of trial. M.A. was arrested the next day on an attachment and brought to the courthouse. (*Id.* at 12-16). Petitioner alleges M.A. was handcuffed, placed into a jail cell, and confined for about forty-five minutes. He further alleges the assistant district attorney told M.A. that this "was just a small taste of what you will get if you don't testify at trial as to the original statement that we received." (Doc. 1 at 21).

Petitioner alleges that prior to trial defense counsel failed to conduct an investigation into M.A.'s claims. He asserts she had knowledge that a physical examination performed on M.A. at the Child Advocacy Center failed to show any evidence of abuse, that M.A.'s pediatricians had performed physical exams on M.A. numerous times during the period of abuse but had not noted concerns about sexual abuse, and that Petitioner has the herpes virus and M.A. does not, yet she

3

did not contact an expert as to the relevance of this information. Petitioner also alleges defense counsel failed to interview defense witnesses or view an allegedly exculpatory videotape prior to trial. (Docs. 1 and 8).

During trial, M.A. testified in detail about how Petitioner sexually abused him. M.A. acknowledged he told Petitioner's defense attorney he had not been abused by Petitioner and signed an affidavit stating the same but said he had been abused and was testifying honestly during the trial. M.A.'s girlfriend testified M.A. had told her he had been sexually abused by his father between the ages of ten and fifteen. (Doc. 6-11 at 5). Christy Jacobs, a therapist who had treated M.A., testified M.A. had disclosed to her Petitioner had abused him between the ages of ten and fifteen. (Doc. 6-11 at 6). Debbie Gibson, a therapist and forensic evaluator, testified child victims of sexual abuse often recant allegations due to fear of consequences and pressure from the perpetrator and family. Defense counsel did not cross examine Gibson. (Doc. 6-5 at 23) Petitioner testified on his own behalf and denied all allegations of abuse. (Doc. 6-5 at 36-61 and Doc. 6-6 at 41-94).

On the second day of trial prior to the jury being brought into the courtroom for the day, Petitioner began experiencing chest pain. (Doc. 6-3 at 51). Someone at the court called 911, and Petitioner was taken to the hospital. Petitioner alleges several members of the jury saw him being wheeled out of the courthouse on a stretcher. (Doc. 1 at 15). After Petitioner arrived back at court that afternoon, defense counsel moved for a mistrial based on the fact certain jury members witnessed the incident. (Doc. 6-3 at 71). She later withdrew the motion. (*Id.* at 73).

The jury returned a guilty verdict on all charges, and Petitioner was sentenced to serve a 20-year term of imprisonment on the first-degree sodomy conviction, a 10-year term of imprisonment for the second-degree sodomy conviction, and a 5-year term of imprisonment for

4

the first-degree sexual abuse conviction. (Doc. 6-11 at 1). Defense counsel filed a motion for a new trial, which was denied after a hearing. (Doc. 6-7 at 68). The Alabama Court of Criminal Appeals affirmed the convictions on appeal (Doc. 6-11), and the Alabama Supreme Court denied certiorari (Doc. 6-15). Petitioner filed a timely Rule 32 petition, which was summarily denied by the trial court on March 28, 2011. (Doc. 6-16). Petitioner appealed that decision to the Alabama Court of Criminals Appeals, which affirmed the trial court's decision and affirmatively adopted the trial court's decision as its own. (Doc. 6-23). After a filing a motion for rehearing (Doc. 6-24), the Petitioner filed a petition for writ of certiorari to the Alabama Supreme Court (Doc. 6-26), which was denied (Doc. 6-27). Subsequently, Petitioner filed a timely § 2254 petition in this court. (Doc. 1).

## II.   DISCUSSION

Review of the Petition is limited by 28 U.S.C. § 2254 as amended by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"). *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). As such, for those claims that the state court adjudicated on the merits and were not otherwise procedurally defaulted, the court may grant habeas relief only in those cases where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C § 2254(d)(2), or "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d)(1).

That being said, a state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1) (a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies

available in the courts of the State."). The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

### A.    Ineffective Assistance of Counsel Claims

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend VI.  "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).  A claim of ineffective assistance of counsel can be established upon a showing that the (1) "counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In a habeas corpus action, the petitioner generally carries the burden to establish both components.  *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992)).

The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions . . . that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690. The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted). ... "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685,

6

702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also prove prejudice. To do so the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show counsel's errors merely had "some conceivable effect on the outcome of the proceeding." *Id.*, 466 U.S. at 693. A court may decline to reach the performance prong if convinced the prejudice prong cannot be satisfied in any event. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010).

Having established the general law with respect to ineffective assistance of counsel claims, the court will now address each of Petitioner's claims in turn.

### 1.      Trial Counsel's Failure to Conduct a Pretrial Investigation

*(1)  Trial counsel was ineffective because she failed to conduct an appropriate pretrial investigation.  Specifically, she failed to interview or investigate the doctors from the Child Advocacy Center in Huntsville, Alabama, who performed the physical exam on M.A.; she failed to contact or interview M.A.'s family doctor; she failed to obtain medical records from M.A.'s family doctor or request that he testify at trial; and she failed to get an expert related to herpes. (Doc. 1 at 7-10).[3]*

Petitioner contends he was denied his Sixth Amendment right to counsel when his trial attorney failed to properly investigate the lack of medical evidence to support the allegations of sexual abuse.  (Doc. 1 at 7-10); (Doc. 8 at 11-20).  Specifically, he alleges trial counsel failed to consult with M.A.'s pediatricians, who had examined M.A. numerous times during the time period in which the abuse occurred, or subpoena M.A.'s medical records from this time period; failed to consult with the physician who examined M.A. at the request of the State;[4] and failed to consult a medical expert on the herpes virus.  (Doc. 1 at 7-10).

Petitioner argues relevant medical records and information from M.A.'s pediatricians and the SANE nurse would all show there was no physical evidence of sexual abuse.  Further, an expert on the herpes virus would have testified as to the impossibility of sexual contact given Petitioner has the herpes virus and M.A. does not.  (Doc. 1 at 7).  He further argues had trial

---

[3]  In his Reply to the State's Answer (Doc. 8), Petitioner lists seven ways in which trial counsel allegedly failed to adequately conduct a pretrial investigation: (1) trial counsel failed to interview any defense witnesses prior to trial; (2) trial counsel failed to consult or retain an expert on the herpes virus; (3) trial counsel failed to interview the SANE nurse who performed an examination on M.A.; (4) trial counsel failed to interview M.A.'s pediatricians; (5) trial counsel failed to subpoena M.A.'s medical records for the relevant time period; (6) trial counsel failed to research Child Abuse Accommodation Syndrome; and (7) trial counsel did not view a videotape prior to trial that Petitioner contends was exculpatory.  (Doc. 8 at 16).  The claim of error numbered by Petitioner as (1) was not addressed in the initial § 2254 Petition.  Further, (6) was included as part of a separate claim, and (7) was a claim of its own.  In its Answer, the State conceded that Petitioner had exhausted the ineffective assistance of counsel claim as it relates to trial counsel's failure "to conduct a pretrial investigation regarding a lack of medical evidence to show that M.A. has been molested or subpoena the victim's medical records."  (Doc. 6 at 31).  The alleged errors numbered above as (1), (6), and (7) do not meet the description of this claim and, upon review, are procedurally barred.  The undersigned will address each of these three claims more specifically and below.

[4]  Petitioner later clarified this examination was performed by the SANE nurse from the Child Advocacy Center.  (Doc. 8 at 11-12).

counsel investigated these facts and presented them to the jury, it is likely the jury would have found him not guilty. (Doc. 8 at 11-20).

The trial court addressed these claims when it denied Petitioner's Rule 32 petition.[5] (Doc. 6-16 at 4-27). In denying this claim, the court began by outlining the pleading standard for ineffective assistance of counsel claims. (Doc. 6-16 at 10). In doing so, the court cited to *Hyde v. State*, 950 So. 2d 344, 356 (Ala. Crim. App. 2006), which in turn notes the federal standard for ineffective assistance of counsel described in *Strickland*. The trial court specifically addressed those claims related to trial counsel's failure to conduct a pretrial investigation as follows:

> Petitioner alleges that he was prejudiced by counsel's inadequate pre-trial investigation into the lack of evidence that M.A. had suffered any physical injuries or illness as a result of Petitioner's allegedly ongoing sexual abuse and sodomy. To satisfy his burden of pleading as to this claim, the Petitioner must plead with specificity what information would have been obtained as a result of counsel's investigation of this issue and, assuming the information would have been admissible, facts indicating that there is a reasonable probability that its admission would have produced a different result at trial. . . . Upon consideration of the allegations in the Petition, the Court finds that he has failed to satisfy this burden.

> As part of this claim, Petitioner contends that counsel should have attempted to obtain the medical records of routine physical examinations conducted by M.A.'s pediatricians during the five-year period in which Petitioner's abuse of M.A. allegedly took place. Petitioner contends that these records would have shown that during these examinations, M.A.'s physicians noticed no evidence of sexual abuse. Petitioner's allegation, however, is based purely on speculation about the contents of these records. Accordingly, he has failed to satisfy this burden of pleading specific *facts* indicating that he was prejudiced by counsel's omission. Furthermore, Petitioner has alleged that M.A. himself testified that he had no medical problems, pain, tears, or [scarring] during the period of the alleged abuse and that he did not have any recurring medical problems from the alleged abuse. As such, even accepting as true Petitioner's speculation regarding the contents of these records, Petitioner has failed to plead specific facts indicating that he was prejudiced by counsel's failure to obtain these records or seek their admission into evidence.

---

[5] The Alabama Court of Criminal Appeals expressly adopted the opinion of the trial court when it affirmed that order. (Doc. 6-23 at 3).

Petitioner also alleges that counsel should have contacted the SANE nurse about the physical examination that she conducted at the behest of the State and that counsel should have obtained the nurse's report of the results of this examination. Petitioner alleges that this examination revealed no physical evidence of sexual abuse. Again, even accepting this allegation as true, Petitioner has failed to plead facts indicating that, but for counsel's failure to contact the SANE nurse or obtain the report in question, there is a reasonable probability that the result of the trial would have been different. Furthermore, Petitioner has alleged that counsel in fact attempted to discover this report and that the State improperly withheld it. As such, he has failed to plead facts indicating that counsel's failure to obtain this report constituted professional error. Similarly, Petitioner has failed to plead facts indicating that counsel had any means of compelling the SANE nurse to discuss her examination of [] M.A. Absent such means, counsel's failure to interview the nurse cannot be deemed to be professional error.

* * *

As alleged by the Petitioner, the Assistant District Attorney stated on the record that she anticipated that, if allowed to testify at trial, the SANE nurse would testify that "it's very common in these kinds of cases that tears to the body harmed by this kind of abuse typically heal in 48 hours" and that she had not examined M.A. until two years after the alleged abuse. Petitioner contends that it was necessary to call M.A.'s pediatricians to rebut this anticipated testimony. More specifically, he alleges that if called, these physicians would have testified that multiple acts of sodomy would cause physical signs of penetration and that in the case of a five (5) year old victim, the insertion of a finger would result in physical changes that would be present for a considerable, if not permanent amount of time.

Upon consideration, the Court finds that Petitioner has failed to satisfy his burden of pleading specific facts indicating that counsel's failure to call these physicians as witnesses constituted professional error or that, but for this omission, there is a reasonable probability that the result of the trial would have been different.

As an initial matter, Petitioner has failed to allege facts indicating that the SANE nurse testified at trial in accordance with what the prosecutor thought she would say. Instead, Petitioner's own exhibits reflect that, pursuant to his counsel's objection, the nurse was not allowed to testify because the State had failed to produce a copy of the nurse's report to the Petitioner. Accordingly, he has failed to plead specific facts indicating that he was prejudiced by counsel's omission.

Furthermore, the Petitioner's mere speculation about the content or nature of the testimony that might have been elicited from these physicians fails to satisfy his burden of pleading specific facts that if true would show that counsel's omission constituted professional error or that he was prejudiced as a result.

Finally, as to the admissibility of this opinion testimony, Petitioner has failed to plead any facts indicating that either of M.A.'s pediatricians had the requisite experience in examining sexually abused children to qualify as an expert on the long term physical indications of such abuse. Furthermore, as to expert testimony regarding the physical effects of sexual abuse of a five-year-old, Petitioner has failed to plead facts indicating that this evidence would have been relevant or admissible in a case in which the alleged victim was at any relevant time not less than ten years of age.

* * *

Petitioner has failed to plead specific facts indicating that, but for [counsel's failure to present exculpatory expert medical testimony about the Genital Herpes Virus], there is a reasonable probability that the result of the trial would have been different. Furthermore, having presided over the Petitioner's trial and having personal knowledge of the nature of the evidence presented, the Court finds as a matter of fact that Petitioner was not prejudiced by these omissions.

(Doc. 6-16 at 13-15).

"AEDPA sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.'" *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) (citing 28 U.S.C. § 2254(d)). Thus, the first question the undersigned must address is whether the trial court's ruling on Petitioner's Rule 32 petition constitutes an adjudication on the merits of his Sixth Amendment ineffective assistance of counsel claim. The trial court's opinion does not mention Petitioner's Sixth Amendment claims, nor does it reference federal law when ruling on the claim. (Doc. 6-16 at 9-15). However, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Williams*, 133 S. Ct. at 1094 (internal citation and quotation marks omitted). While this presumption is rebuttable, Petitioner has made no argument indicating it should be rebutted. Further, given that the standard cited by the trial court for determining whether counsel has been ineffective aligns with *Strickland*, it is unlikely the court did not decide the federal claim. *Id.* at 1098-99. Accordingly,

the undersigned finds Petitioner's ineffective assistance of counsel claims were adjudicated on the merits.

This is true even though the trial court's decision was based on Petitioner's failure to plead facts that would entitle him to relief. *Powell v. Allen*, 602 F.3d 1263, 1273 (11th Cir. 2010). Because of the nature of the Rule 32 court's decision, this court's review under AEDPA is limited to whether the state court's determination that Petitioner's Rule 32 petition failed to plead sufficient facts to support a claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, Supreme Court precedent.[6]  *Id.*  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.  The petitioner carries the burden of proof." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, (2011) (citations and internal quotation marks omitted).

As a preliminary note, Petitioner has not offered any argument concerning whether the Rule 32 court's decision was contrary to, or involved an unreasonable application of, federal law, as determined by the United States Supreme Court.  On that fact alone, Petitioner has failed to meet his burden.  Nevertheless, the court will address the issue in more detail below.

The Supreme Court has explained this deferential standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[6]  Because review is limited to the Rule 32 court's determination concerning whether the allegations in the Rule 32 petition were sufficiently pled, the court's review is limited to the allegations and evidence submitted as part of the Rule 32 petition and not allegations and/or evidence submitted elsewhere.  *Powell v. Allen*, 602 F.3d 1263, 1273 (11th Cir. 2010).

*Williams v. Taylor*, 529 U.S. at 412-13.  First, it is clear the opinion denying Petitioner's Rule 32 petition was not "contrary to" clearly established federal law as determined by the Supreme Court of the United States.  The Alabama court's decision was not opposite to the United States Supreme Court on a question of law.  Further, the Rule 32 court did not confront facts that were materially indistinguishable from a relevant Supreme Court opinion and reach a different result.  *Id.*

The Rule 32 court correctly identified the two prong-performance and prejudice standard, as described in *Strickland*, for determining when counsel's performance is constitutionally deficient.  Thus, the court must determine whether the Rule 32 court unreasonably applied that standard to the facts of this case.  *Id.*  To be clear, "the question for a federal habeas court is 'whether the state court's application of clearly established federal law was objectively unreasonable,' *Williams,* 529 U.S. at 409, and an '*unreasonable* application of federal law is different from an *incorrect* application of federal law,' *id.* at 410."  *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1268 (11th Cir. 2012).

"[A] state court's application of federal law is unreasonable only if no 'fairminded jurist' could agree with the state court's conclusion."  *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  "[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied."  *Id.* (internal citation and quotation marks omitted).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Johnson v. Sec'y, DOC,* 643 F.3d 907, 910 (11th Cir. 2011) (internal citation and quotation marks omitted).  Thus, the question is whether any fairminded jurists could agree that the allegations in Petitioner's Rule 32 petition were insufficient to maintain his ineffective assistance of counsel claims.  Because the court answers this question in the affirmative, the Rule

32 court's decision was not an unreasonable application of federal law as determined by the Supreme Court of the United States.

To reach this conclusion, the court must first review the allegations contained in the Rule 32 petition. In his Rule 32 petition, Petitioner alleges M.A. testified that he had been abused 400-500 times between the ages of ten and fifteen and, during that same time period, he had not experienced any medical problems such as pain, tears, or scarring and did not have recurring problems as a result of his abuse or injuries to his private organs. (Doc. 6-17 at 44). M.A. testified he did not have the herpes virus. (*Id.* at 53). Petitioner alleged he contracted the herpes virus before M.A.'s birth and had continual outbreaks as a result of the virus through the time of his trial. (*Id.* at 45). He further asserted the herpes virus can be spread when symptoms are not present with a "70% chance per sexual incident of spreading the Herpes virus." (*Id.*) Petitioner did not point to testimony from any expert in support of this contention. (*Id.* at 44-54).

Petitioner also alleges in published opinions courts have mentioned experts in other sexual abuse cases who have testified about the physical injuries that can result from sexual abuse, including sodomy. (Doc. 6-17 at 46). In one such case, a doctor testified that in the case of a five-year-old victim the insertion of even a finger would result in physical changes that would be present for a considerable about of time, if not permanently. In the other, Petitioner alleges a doctor testified signs of penetration would exist if the abuse occurred on multiple occasions. (*Id.*) Petitioner further posits, like these two experts, "a medical doctor such as [M.A.'s] pediatricians . . . would have discredited [any potential testimony from the State that tears from this kind of abuse typically heal in 48 hours]." (*Id.* at 45-46). He also states that "a medical expert for the defense would testify [about] the improbability of any such events happening without any signs of anal abnormalities." (*Id.* at 52). However, there is no allegation

14

such testimony exists as applied to this case.  Further, the record is clear that, ultimately, no expert from the State testified as to how long injuries from this type of abuse take to heal.

Petitioner further alleges trial counsel made no effort to interview the SANE nurse who performed an examination of M.A., nor did she attempt to obtain the medical records from that examination.  (Doc. 6-17 at 46).  This examination revealed no evidence of any sexual abuse.  (*Id.* at 48).

Finally, Petitioner alleges trial counsel failed to contact M.A.'s pediatricians or request his medical records from them.  He asserts that, while he has not seen the medical records because the doctors' office would not release them without a subpoena, they are exculpatory in nature.  (Doc. 6-17 at 47).

Petitioner argues these omissions have prejudiced him because this evidence would have supported his claim he was innocent or, at least, called M.A.'s testimony into doubt.  (Doc. 6-17 at 49).

As noted above, to establish Petitioner was provided ineffective assistance of counsel under *Strickland*, he must show counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  To establish prejudice "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Here, even assuming Petitioner has sufficiently alleged counsel's performance was deficient, the court cannot say the trial court's determination he failed to allege sufficient facts to establish prejudice was unreasonable.

With respect to Petitioner's claim trial counsel was ineffective for failing to interview or investigate the medical professional from the Child Advocacy Center who performed the examination of M.A., Petitioner fails to allege what such interview or investigation would have revealed. As such, Petitioner cannot show how he was prejudiced. Thus, the court was not unreasonable in determining Petitioner failed to sufficiently plead this claim.

Regarding the claim trial counsel was deficient for failing to subpoena medical records from either M.A.'s pediatricians or the SANE nurse who performed the examination of him, there are no allegations in the Rule 32 petition to establish the significance of those records. This is especially true in light of Petitioner's admission he has not reviewed medical records from M.A.'s pediatricians. (Doc. 6-17 at 47). Even assuming these records would show no medical evidence of abuse, that M.A. testified he did not suffer any physical harm as a result of the abuse cuts against a finding Petitioner was prejudiced because counsel did not subpoena these records. In light of this, it was not unreasonable for the state court to conclude Petitioner was not prejudiced by trial counsel's failure to subpoena M.A.'s medical records.

As to Petitioner's claim trial counsel was ineffective for failing to interview M.A.'s pediatricians, he similarly fails to plead facts that would establish he was prejudiced by trial counsel's purported deficient performance. Petitioner does not allege the existence of testimony from these doctors concerning the relevance of the lack of physical evidence of abuse. Petitioner's reference to testimony offered by other doctors in factually distinct cases is not probative as to what M.A.'s pediatricians' testimony might be. Accordingly, the undersigned cannot say the trial court was unreasonable in determining Petitioner did not sufficiently plead facts to establish prejudice as to this claim.

16

Petitioner's final claim is trial counsel was deficient in failing to retain an expert regarding the transmission of the herpes virus. Petitioner references a statistic concerning the transmission of herpes but does not allege the existence of an expert to testify as to the accuracy of that statistic or the odds of transmission from Petitioner to M.A. given the circumstances of this case. Thus, the court cannot say the trial court was unreasonable in finding the alleged facts were insufficient to show Petitioner was prejudiced by trial counsel's performance.

The standard for finding a state court has unreasonably applied federal law is a high one. For the reasons discussed above, the court cannot say the state court's decision was contrary to, or an unreasonable application of, *Strickland's* ineffective assistance of counsel standard. As such, Petitioner is not entitled to relief on this claim.[7]

### 2.    Procedurally Defaulted Claims

The State argues the remaining ineffective assistance of counsel claims are unexhausted and, as such, are procedurally defaulted. The court will first address exhaustion as to each claim and then will address how that leads to procedural default of the claims as a whole and whether any exceptions to procedural default apply here.[8]

---

[7] Petitioner relies on *Holsomback v. White* as support for his claim trial counsel was ineffective. 133 F.3d 1382 (11th Cir. 1998) (finding counsel was ineffective when he failed to consult with examining physicians after learning there was little or no physical evidence of sexual abuse in a case where a father was accused of sodomizing his son). This case was decided using the pre-AEDPA framework. As such the Eleventh Circuit conducted a *de novo* review of the claim. This is notably different that the review the court must conduct here.

[8] The ineffective assistance of counsel claims numbered 8 through 11 were not raised in Petitioner's initial § 2254 Petition and instead were raised for the first time in Petitioner's Reply to the State's Answer (Doc. 8). Accordingly, they are not properly before the court. Rule 2(c), Rules Governing Habeas Corpus Cases Under Section 2254 ("The petitioner must: (1) specify all the grounds for relief available to the petitioner . . . ."); *see also Cooper v. Sec'y, Dept. of Corrections*, No. 8:08–CV–5–T–27MAP, 2011 WL 795812 at *7 (M.D. Fla. Mar.1, 2011) (holding that, under Rule 2(c), a habeas petitioner may not later raise claims not contained in his original petition). Further, these claims were not raised in response to arguments made by the State such that the undersigned is required to consider them. *Compare Cooper*, 2011 WL 795812 at *7 *with Williams v. Florida Dep't of Corr.*, 391 F. App'x 806, 810 (11th Cir. 2010). That being said, even if these claims were properly before the court they would be due to be denied as procedurally defaulted as demonstrated below.

### a.    Exhaustion

A state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also* 28 U.S.C. § 2254(b)(1) (a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State."). The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court. *See* ALA. R. APP. P. 4 and 39-40. As noted below, Petitioner failed to exhaust the remaining ineffective assistance of counsel claims.

*(2) Trial counsel was ineffective for failing to view exculpatory evidence, namely, a video tape that showed a loving and caring father-son relationship and that Petitioner was a truck driver and was not in the state when the alleged abuse occurred. (Doc. 1 at 8-9).*

Petitioner did not present this claim to the Alabama Supreme Court in his petition for writ of certiorari.  (Doc. 6-26).  As such, he has not exhausted the claim because he did not give the state courts one full opportunity to resolve any constitutional issues.

*(3) Trial counsel was ineffective for failing to object or file a motion requiring the State to elect which of the sexual abuse incidents formed the basis of the indictment or seek a specific unanimity instruction. (Doc. 1 at 10-12).*

Petitioner's claim trial counsel was ineffective for failing to object or file a motion requiring the State to elect which of the sexual abuse incidents formed the basis of the indictment and/or seek a specific unanimity instruction was not raised in his petition for writ of certiorari.[9]

---

[9]  The State addresses this claim as if it is two separate claims.  (Doc. 6 at 36).  At times Petitioner addresses the claims separately.  (Doc. 6-16 at 49-50; Doc. 6-17 at 84-87).  Other times, he addresses them as two sides of the

(Doc. 6-26).  To the extent Petitioner argues he did raise this claim in his petition for writ of certiorari by referencing "Footnote 2" from the decision of the Alabama Court of Criminal Appeals (Doc. 8 at 23), that argument fails.

Petitioner's first claim for relief in his petition for writ of certiorari to the Alabama Supreme Court asserts "the Petitioner was denied effective assistance of trial counsel by her deficient performance and the cumulative effect of those errors denied Petitioner due process of law and the constitutional right to have effective assistance of counsel."  (Doc. 6-26 at 2-3). Petitioner argued the Alabama courts should look at the cumulative effects of trial counsel's alleged deficiencies, even if each individual claim would not independently rise to the level of ineffective assistance of counsel.  (*Id.*).  In making this argument, he referenced a footnote from the decision of the Alabama Court of Criminal Appeals listing his claims for ineffective assistance of counsel, including this claim.  (Doc. 6-23 at 2 n.2).  However, when read in context, it is clear Petitioner is challenging the ruling relating to whether a court can find counsel was ineffective based on cumulative errors and that Petitioner mentioned the list to illustrate the cumulative nature of the errors made in his trial.  What is not clear from the petition for writ of certiorari is that Petitioner was seeking to raise each and every individual claim for ineffective assistance of counsel before the Alabama Supreme Court.  Because this claim for ineffective assistance of counsel was not fairly presented to the Alabama Supreme Court, it has not been exhausted.

---

same coin—that is, that counsel should have either asked the state to elect which claims formed the basis of the indictment or requested a specific unanimity instruction.  (Doc. 1 at 10-12) and (Doc. 6-20 at 73-76).  To the extent Petitioner asserts a distinct ineffective assistance of counsel claim for failing to request a unanimity instruction, that claim is not exhausted because Petitioner not only failed to raise it in his petition for writ of certiorari, but also failed to raise it in his motion for rehearing before the Alabama Court of Criminal Appeals.  (Docs. 6-24 and 6-26).

*(4) Trial counsel was ineffective for failing to object to the fatal variance between the indictment and the proof presented at trial. (Doc. 1 at 12).*

Petitioner did not include this claim in either the Rule 32 appeal or his petition for writ of certiorari to the Alabama Supreme Court. (Docs. 6-20 and 6-26). Accordingly, it has not been properly exhausted.

*(5) Trial counsel was ineffective for failing to object, request a jury instruction directing the jury to not to consider hearsay testimony, or otherwise preserve alleged error relating to the court's admission of certain hearsay testimony. (Doc. 1 at 12-13).*

This claim was not raised in Petitioner's petition for writ of certiorari to the Alabama Supreme Court. (Doc. 6-26). Accordingly, is has not been properly exhausted.

*(6) Trial counsel was ineffective for failing to cross-examine the State's expert witness. Further she failed to acquire sufficient information, including research about Child Accommodation Syndrome, prior to that testimony to be able to properly rebut it. (Doc. 1 at 13-14).*

Petitioner did not present this claim in either his Rule 32 appeal or his petition for writ of certiorari to the Alabama Supreme Court. (Docs. 6-20 and 6-26). Thus, this claim has not been exhausted.

*(7) The cumulative effect of the above errors resulted in ineffective assistance of counsel. (Doc. 1 at 14).*

While this argument was addressed in Petitioner's motion for rehearing before the Alabama Court of Criminal Appeals (Doc. 6-24 at 4, 11) and in his petition for writ of certiorari (Doc. 6-26 at 2-3), Petitioner never actually raised the claim in his initial brief on appeal. (Doc. 6-20). Petitioner argues he raises this issue on page 35 of his appellate brief. However, a review of the brief in its entirety, including this cited portion, reveals the claim was not raised. Accordingly, it has not been properly exhausted.

*(8) Trial counsel was ineffective for failing to interview any defense witnesses before trial.  (Doc. 8 at 16).*

Petitioner failed to raise this issue in his Rule 32 petition (Docs. 6-16, 6-17, 6-18, and 6-19), in his appeal to the Alabama Court of Criminal Appeals (Doc. 6-20), in his Motion for Rehearing (Doc. 6-24), or in his Petition for Writ of Certiorari to the Alabama Supreme Court. (Doc. 6-26).  Accordingly, this claim has not been properly exhausted.

*(9) Trial counsel was ineffective for allowing the trial court to admonish her in the presence of the jury.  (Doc. 8 at 23-27).*

Petitioner raised this claim in his Rule 32 petition (Doc. 6-17 at 60-67), his Rule 32 Appeal (Doc. 6-20 at 59-64), and in his motion for rehearing to the Alabama Court of Criminal Appeals (Doc. 6-24 at 3).  However he did not raise it in his petition for writ of certiorari to the Alabama Supreme Court.  (Doc. 6-26).  To the extent Petitioner argues he did raise it in his Petition for Certiorari by referencing "Footnote 2" from the decision of the Alabama Court of Criminal Appeals (Doc. 8 at 23), that argument fails for the same reasons as above.

*(10) Trial counsel was ineffective for failing to object and argue the State's expert witness testified to opinions and studies for which she had no first-hand knowledge or which were based on records not admitted into evidence. (Doc. 8 at 27-29).*

Petitioner did not raise this claim in his motion for rehearing before the Alabama Court of Criminal Appeals.  While Petitioner contends he raised this claim on pages 3 to 4 of the motion for rehearing, a thorough review of those pages, and of the motion in its entirety, shows the issue was not raised.  (Doc. 6-24).  As such, this issue has not been properly exhausted.

*(11) Trial counsel was ineffective for failing to recognize and object to jurisdiction and venue issues related to the fact that one of the alleged incidents of abuse occurred outside the State of Alabama (Doc. 8 at 30-32).*

Petitioner raised this claim in his Rule 32 petition (Doc. 6-17 at 77-83), his Rule 32 Appeal (Doc. 6-20 at 67-72), and in his motion for rehearing before the Alabama Court of

Criminal Appeals (Doc. 6-24 at 3).   However, he did not raise it in his petition for writ of certiorari to the Alabama Supreme Court.   (Doc. 6-26).   To the extent Petitioner argues he raised the issue in his petition for writ of certiorari by referencing "Footnote 2" from the decision of the Alabama Court of Criminal Appeals (Doc. 8 at 23), that argument fails for the same reasons it did above.   Accordingly, this claim has not been properly exhausted.

### b.   Procedural Default

Because Petitioner failed to exhaust these ineffective assistance of counsel claims, and because he cannot reassert these claims in state court now because they would arise from an untimely, successive petition or otherwise would be disallowed because they were, or could have been, raised at trial, on appeal, or in his initial Rule 32 petition, the claims are procedurally defaulted.   *O'Sullivan*, 526 U.S. at 848.

Once a federal claim is procedurally defaulted in state court, a state habeas petitioner "is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).   "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" or that the procedural default was the result of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   Prejudice, in this context, means a reasonable probability that the outcome would have been different. *Jenkins v. Bullard*, 210 F. App'x 895, 898-901 (11th Cir. 2006).   In the absence of a showing of cause and prejudice, the court may consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." *Smith v. Murray*, 477 U.S. 527, 537-38 (1986).   To establish actual

22

innocence,[10] Petitioner must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal citations and quotation marks omitted).  "To be credible a gateway claim requires new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 537 (internal alterations and quotation marks omitted).  Absent one of these exceptions, however, procedurally defaulted claims cannot be raised in federal habeas corpus petitions. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F. 3d 1317, 1343-45 (11th Cir. 2004).

In his response to the State's Answer, Petitioner generally acknowledges both the cause and prejudice exception and the fundamental miscarriage of justice exception for overcoming procedural default (doc. 8 at 9).  However, he makes no argument concerning their applicability to the claims at issue.

Petitioner does argue that to comply with the page limit required for a petition for writ of certiorari, he was only able to refer to the list of ineffective assistance of counsel claims noted by the Court of Criminal Appeals.  (Doc. 8 at 9-10).  To the extent this could be understood as an argument that he has cause for the procedural default, the argument fails.  As Petitioner notes, Rule 32(b)(2) of the Alabama Rules of Appellate Procedure imposes a fifteen-page page limit on petitions for writ of certiorari.  However, Petitioner's petition for writ of certiorari is only eleven pages.  (Doc. 6-26).  Because Petitioner failed to use all fifteen pages allowed, the page limit imposed by the Alabama Rules of Appellate Procedure cannot constitute cause for Petitioner's failure to include these ineffective assistance of counsel claims in his petition for writ of certiorari.  Because these ineffective assistance of counsel claims are procedurally defaulted and

---

[10] "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

because Petitioner has failed to show that he is entitled to an exception from that procedural default, these claims are due to be denied.

## B.       Trial Court Error Claims

As noted, a state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also* 28 U.S.C. § 2254(b)(1) (a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State."). Because Petitioner has failed to do so, his claims of trial court error are procedurally defaulted.

### 1.       Exhaustion

*(1) The trial court erred in failing to declare a mistrial after certain jurors witnessed Petitioner being attended to by EMS after an episode where he experienced chest pain thereby denying him the right to a fair trial. (Doc. 1 at 15-16).*

Petitioner addressed the question of whether the trial court erred in failing to declare a mistrial after certain jurors witnessed him being attended to by EMS in his Rule 32 petition, his brief on appeal to the Alabama Court of Criminal Appeals, and his petition for writ of certiorari in the Alabama Supreme Court. However, this issue was not raised in his motion for rehearing before the Alabama Court of Criminal Appeals. (Doc. 6-24). Thus, he has failed to exhaust this claim.[11]

*(2) The trial court erred in excluding a report concerning a physical examination of M.A. that was exculpatory in nature. (Doc. 1 at 16-17).*

Petitioner raised this issue in his Rule 32 petition but did not present it on appeal to the Alabama Court of Criminal Appeals, in his application for rehearing, or in his petition for a writ

---

[11] Petitioner asserts he raised this issue on page 3 of his application for rehearing before the Alabama Court of Criminal Appeals. (Doc. 8 at 36). However, a thorough review of the petition for rehearing shows the issue was not raised.

24

of certiorari to the Alabama Supreme Court. (Docs. 6-20; 6-24; and 6-26). Accordingly, he has failed to exhaust this claim.

*(3) The trial court erred in denying Petitioner's motion to introduce Petitioner's medical records. (Doc. 1 at 17-18).*

Petitioner raised this claim in his direct appeal of his criminal conviction to the Alabama Court of Criminal Appeals and in his application for rehearing following that court's affirmance of his conviction. However, he did not reassert this claim in his petition for writ of certiorari in the Alabama Supreme Court.[12] (Doc. 8 at 1-6). As such, this claim has not been exhausted.

*(4) The trial court erred by failing to give a unanimity instruction prior to jury deliberations. (Doc. 1 at 18-19).*

Petitioner addressed this claim in his Rule 32 petition but did not pursue it further on appeal. (Docs. 6-20; 6-24; and 6-26). Accordingly, he failed to exhaust this claim.

*(5) The trial court erred by verbally admonishing defense counsel in the presence of the jury. (Doc. 1 at 19-20).*

Petitioner addressed this claim in his Rule 32 petition but did not pursue it further on appeal.[13] (Docs. 6-20; 6-24; and 6-26). Accordingly, he failed to exhaust this claim.

*(6) The trial court erred when it denied defense counsel's request to have the victim physically examined by a doctor. (Doc. 1 at 20).*

Petitioner addressed this claim in his Rule 32 petition but did not pursue it further on appeal. (Docs. 6-20; 6-24; and 6-26). Accordingly, he failed to exhaust this claim.

---

[12] This claim is also not presented in Petitioner's Rule 32 petition. (Doc. 6-16 at 84-100; Doc. 6-17; Doc. 6-18; and Doc. 6-19 at 1-74).

[13] Petitioner did make an argument concerning the trial court's admonishment of trial counsel in his initial brief to the Alabama Court of Criminal Appeals. (Doc. 6-20 at 59-64). However, he did so in the context of an ineffective assistance of counsel claim. Even if this were sufficient to fairly present the trial court error claim to the Alabama Court of Criminal Appeals, he did not raise the issue in his petition for rehearing or his petition for writ of certiorari to the Alabama Supreme Court.

## 2.   Procedural Default

Because Petitioner failed to exhaust his six claims of trial court error and because Petitioner cannot reassert these claims in state court now because they would arise from an untimely, successive petition or otherwise would be disallowed because they were, or could have been, raised at trial, on appeal, or in his initial Rule 32 petition, the claims are procedurally defaulted. *O'Sullivan*, 526 U.S. at 848.

Once a federal claim is procedurally defaulted in state court, a state habeas petitioner "is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). In the absence of a showing of cause and prejudice, the court may consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." *Smith v. Murray*, 477 U.S. 527, 537-38 (1986). To establish actual innocence, Petitioner must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal citations and quotation marks omitted). "To be credible a gateway claim requires new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 537. Absent one of these exceptions, however, procedurally defaulted claims cannot be raised in federal habeas corpus petitions. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343-45 (11th Cir. 2004).

In his response to the State's Answer, Petitioner generally acknowledges the cause and prejudice exception for overcoming the procedural default. (Doc. 8 at 9). However, he makes

26

no argument concerning its applicability to the claims at hand.  With respect to Petitioner's claim he was denied a fair trial when the trial court failed to declare a mistrial after certain jurors witnessed him being attended to by EMS after an episode of chest pain, he argued the fundamental miscarriage of justice exception should apply.  The entirety of his argument is as follows:

> Under the fundamental miscarriage of justice procedural default exception I ask this Honorable Court to obtain a review of this claim because as I have and will demonstrate to this Honorable Court, with this argument, the sufficient probability that if this Honorable Court fails to review my federal claim it will result in a fundamental miscarriage of justice.

(Doc. 8 at 38).  This argument is insufficient to establish that Petitioner is actually innocent. Petitioner does not affirmatively argue he is actually innocent or offer any *new* evidence to support such a contention.  Petitioner fails to establish that either exception for procedural default should apply to these claims.  Accordingly, these claims are procedurally defaulted.

### C.      Prosecutorial Misconduct Claims

Prosecutorial misconduct can be a basis for habeas relief if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotations omitted).  That being said, "the bar for granting habeas [relief] based on prosecutorial misconduct is a high one."  *Land v. Allen*, 573 F.3d 1211, 1220 (11th Cir. 2009).  Habeas relief is only appropriate where the prosecutor's actions rendered the trial "fundamentally unfair." *Id.*

Petitioner brings four claims he has styled as prosecutorial misconduct claims.  The first three are due to be denied as procedurally defaulted.  The fourth fails on the merits.

27

### 1.    Procedurally Defaulted Claims

The doctrine of procedural default was developed as a means of ensuring federal habeas petitioners first seek relief in accordance with established state procedures. *See Presnell v. Kemp,* 835 F.2d 1567, 1578-79 (11th Cir. 1988). Thus, a state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).  A state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim.  *See Harmon v. Barton,* 894 F.2d 1268, 1270 (11th Cir.1990).   Nonetheless, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon "independent and adequate" state grounds.  *See Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991).

To determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision, the Eleventh Circuit has set forth the following three-part test: (1) "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim[;]" (2) "the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law[;]" and (3) the state procedural rule must not be applied in an arbitrary or unprecedented fashion. *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001).

*(1) The State engaged in prosecutorial misconduct when the prosecutor threatened and intimidated M.A. into testifying and when the prosecutor vouched for M.A. by telling him "Good job" after his testimony. (Doc. 1 at 21-22).*

In ruling on Petitioner's claim the prosecutor threatened and intimidated M.A. into testifying, the Rule 32 court found this claim was precluded because it was raised at trial and in Petitioner's motion for a new trial but was not raised on direct appeal in violation of Ala. R. Crim. P. 32.2(a)(2) and (5).[14]  (Doc. 6-16 at 6).  In issuing this ruling, the trial court clearly stated it was relying on the state procedural rule in denying the claim, the decision rests solidly on state law grounds, and the rule was not applied in an arbitrary or unprecedented fashion.  *See Brownlee v. Haley*, 306 F.3d 1043, 1065-66 (11th Cir. 2002).  Because the state court rejected this claim based on independent and adequate state grounds, the claim is procedurally barred unless Petitioner can show he is entitled to an exception.

Likewise, Petitioner's claim that the prosecutor improperly vouched for M.A. is procedurally barred.  Specifically, the Alabama Court of Criminal Appeals stated the following about this claim:

> [Defendant] argues that the prosecutor impermissibly vouched for the credibility of M.A. when she stated, "Good job," at the conclusion of his testimony. [Defendant] did not object to the comment at trial and, therefore, did not receive an adverse ruling from the trial court.  He has failed to preserve anything for this Court's review.  "It is well settled that, in order to preserve an issue for appellate review, a timely objection must be made in the trial court, and the court must enter an adverse ruling," *Birge v. State*, 973 So. 2d 1085, 1105 (Ala. Crim. App. 2007).

(Doc. 6-11 at 13-14)  The Alabama Court of Criminal Appeals clearly and expressly relied on the state procedural rule, the decision rests solidly on state law grounds, and the rule was not applied in an arbitrary or unprecedented fashion.  *See Cloud v. DeLoach*, 147 F. App'x 817, 819 (11th Cir. 2005).  Because the state court rejected this claim based on independent and adequate

---

[14] As previously noted, the Alabama Court of Criminal Appeals explicitly adopted the opinion of the trial court as its own.  (Doc. 6-23 at 3).

state grounds, the claim is procedurally barred unless Petitioner can show he is entitled to an exception.

*(2) The State engaged in prosecutorial misconduct by interfering with Petitioner's rights to a fair trial when the prosecutor told M.A. he did not "have the right to plead the Fifth Amendment" to avoid testifying against Petitioner. (Doc. 1 at 22-23).*

To the extent this claim is distinct from Petitioner's previous claim the prosecutor threatened and intimidated M.A. into testifying, this claim has not been properly exhausted. As established previously, a state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1). The exhaustion doctrine requires a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."

Petitioner failed to raise this issue in his Rule 32 petition (Docs. 6-16, 6-17, 6-18, and 6-19), in his appeal to the Alabama Court of Criminal Appeals (Doc. 6-20), in his motion for rehearing (Doc. 6-24), or in his petition for writ of certiorari to the Alabama Supreme Court. (Doc. 6-26). Accordingly, this claim has not been properly exhausted. Further, because Petitioner cannot reassert these claims in state court now because they would arise from an untimely, successive petition or otherwise would be disallowed because they were, or could have been, raised at trial, on appeal, or in his initial Rule 32 petition, this claim is procedurally defaulted. *O'Sullivan*, 526 U.S. at 848.

*(3) The State engaged in prosecutorial misconduct when the prosecutor withheld exculpatory evidence in the form of a physical examination of M.A. that showed no evidence of sexual abuse or sodomy. (Doc. 1 at 23-24).*

Like the witness intimidation claim the court previously addressed, this claim is unexhausted because Petitioner failed to comply with all independent and adequate state procedures for presenting his claim. In rejecting this claim, the Rule 32 court stated:

> Petitioner further contends that the Assistant District Attorney improperly withheld exculpatory evidence from the Petitioner. Petitioner, however, has not alleged facts indicating that his claim is "based on newly discovery evidence or that any alleged suppression by the State continued until such time [that this] claim could not have been raised at . . . trial." *Boyd v. State*, 913 So. 2d 1113, 1142 (Ala. Crim. App. 2003) . . . . As such, this non-jurisdictional claim is precluded as not having been raised at trial. Ala. R. Crim. P. 32.2(a)(3).

(Doc. 6-16 at 7). In issuing this ruling, the trial court clearly states it is relying on the state procedural rule in denying the claim, the decision rests solidly on state law grounds, and the rule was not applied in an arbitrary or unprecedented fashion. *See Brownlee v. Haley*, 306 F.3d 1043, 1065-66 (11th Cir. 2002). Because the state court rejected this claim based on independent and adequate state grounds, the claim is procedurally barred unless Petitioner can show he is entitled to an exception.

Once a federal claim is procedurally defaulted in state court, a state habeas petitioner "is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). In the absence of a showing of cause and prejudice, the court may consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." *Smith v. Murray*, 477 U.S. 527, 537-38 (1986). To establish actual innocence, Petitioner must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal citations and quotation marks omitted).

In his response to the State's Answer, Petitioner generally acknowledges the cause and prejudice exception for overcoming the procedural default. (Doc. 8 at 9). However, he makes no argument concerning its applicability to the claims at hand. He does seemingly argue he is entitled to the fundamental miscarriage of justice exception. The entirety of his argument is as follows:

> Under the fundamental miscarriage of justice procedural default exception I may obtain review of a claim if I can demonstrate a sufficient probability that the federal court's failure to review this federal claim will result in a fundamental miscarriage of justice.

(Doc. 8 at 40, 44, and 47) (internal citation, alteration, and quotation marks omitted). This argument is insufficient to establish Petitioner is actually innocent. Petitioner does not affirmatively argue he is actually innocent or offer any *new* evidence to support such a contention. Petitioner fails to establish that either exception for procedural default should apply to these claims. Accordingly, these claims are procedurally defaulted.

### 2.      Prosecutor's Use of an Illegally Obtained Audio Recording

*(4) The State engaged in prosecutorial misconduct when Lt. White illegally obtained a tape-recorded conversation between M.A. and Petitioner. (Doc. 1 at 24-25).*

In his final prosecutorial misconduct claim, Petitioner argues "[t]he prosecutor through the lead investigator, Lt. White, obtained through illegal means, a tape recorded conversation between the alleged victim and the petitioner against federal and State laws requiring an application to the District Attorney['s] office before any wire tapping." (Doc. 1 at 24). The tape recorded conversation at issue is between the victim M.A. and his father while M.A. was a minor. (Doc. 1 at 24). The gist of Petitioner's argument is that, because M.A. was a minor at the

time, the police department was required to get parental consent before M.A. could participate in an undercover police operation, i.e. the recorded phone conversation.  Because neither parent consented to M.A.'s participation, the recording was illegally obtained and should not have been introduced at trial.  The fact that this recording was admitted and was played for the jury on two separate occasions deprived Petitioner of a fair trial. (Doc. 1 at 24-25).

In its Answer, the State initially argues this claim fails on the merits.  (Doc. 6 at 46-50).  However, it later appears to argue the issue was not properly exhausted because Petitioner did not fairly present his *federal constitutional* claims to the state courts.  (Doc. 6 at 49-50).   In support of prosecutorial misconduct claim based on a conviction obtained by illegally obtained evidence, Petitioner argues he was "denied his 5th, 6th, or 14th  Amend. Rights under the United States Constitution[] when the State . . . illegally obtained evidence, and by doing so, used such evidence at trial to obtain a conviction of the petitioner under the 'Fruit of the poisonous tree' doctrine." (Doc. 6-17 at 8).  However, the substance of Petitioner's argument focuses solely on violations of Alabama law.  (*Id.* at 8-12).  Further, while Petitioner states he "believes he has proven a substantial violation of [his] constitutional right to receive a fair trial," he does not mention the standard for determining when prosecutorial misconduct rises to the level of a constitutional violation. (*Id.*)   Likewise, Petitioner's arguments before the Alabama Court of Criminal Appeals and Alabama Supreme Court contain only cursory references to various constitutional amendments and fail to contain any argument concerning how Lt. White's alleged misconduct in obtaining the audio recording violated his federal constitutional rights. (Doc. 6-20 at 34-36; Doc. 16-24 at 1-2; Doc 6-26 at 8-9).

"Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court."  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)

(citing 28 U.S.C. § 2254(b)(1)).  For a claim to be exhausted, the claim "must be fairly presented to the state courts," which requires the petitioner to "present the state courts with the same claim he urges upon the federal courts." *Id.* (internal quotation marks omitted).  Although a petition is not required to restate the claims brought in state court verbatim, he is required to present "his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Id.* (internal quotation marks omitted).  However, "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." *Id.* at 1303 (brackets and internal quotation marks omitted).  Without more, it is insufficient for a petitioner to simply state that certain of his constitutional rights were violated. *Id.* at 1303-04 (finding a petitioner failed to fairly present his federal claims to the state court where he merely stated several of his constitutional rights were violated but failed to cite any United States Supreme Court or federal appellate court cases dealing with the alleged constitutional violation or mention the relevant federal presumption).  Like the petitioner in *McNair*, Petitioner has failed to fairly present his federal claims to the state court.  He merely references the Fifth, Sixth, and Fourteenth Amendments without providing any argument or support to explain how those rights were violated.  As such, he has failed to exhaust his state court remedies and is procedurally barred from raising his non-exhausted federal claims in the instant habeas Petition.[15]

Notwithstanding the foregoing, even if this claim were properly exhausted, it would fail on the merits.  When it denied this prosecutorial misconduct claim, the Rule 32 court did so in a

---

[15]  In his response to the State's Answer, Petitioner seemingly argues his procedural default should be excused under the fundamental miscarriage of justice exception.  (Doc. 8 at 47).  While he correctly cites the rule that a court may review a procedurally defaulted claim if the failure to review said claim would result in a fundamental miscarriage of justice, he fails to make any argument as to how this exception applies here.  Accordingly, Petitioner fails to show that the procedural default as to this claim should be excused.

section titled: "The trial court improperly allowed the admission of illegally obtained evidence." (Doc. 6-16 at 8-9). The court[16] found as follows:

> During Petitioner's trial, the State introduced a tape recording of a telephone conversation between the Petitioner and M.A. The recording was made by Lt. Faron White. Lt. White testified during trial that he had obtained M.A.'s consent to record the conversation. Petitioner contends that the recording was obtained illegally because M.A., who was a minor at the time, lacked the capacity to consent to its recording. As such, he contends that the recording was improperly admitted into evidence.
>
> This non-jurisdictional claim is precluded as not having been raised at trial. Ala. R. Crim. P. 32.2(a)(3). Even if not precluded, the Petitioner has failed to cite any State or federal law that would render the recording of this conversation illegal in the absence of consent by M.A. or the Petitioner. Moreover, even assuming that the recording would have been in violation of State or federal law unless consented to by one of the parties, Petitioner has failed to plead facts indicating that M.A.'s consent was not sufficient for this purpose.
>
> M.A.'s status as a minor did not in and of itself foreclose his capacity and ability to consent to the recording of his telephone conversation. *See Stinson v. Larson*, 893 So. 2d 462 ([Ala. Civ. App.] 2004) (observing that a fifteen-year-old minor's ability to consent to the recording of her telephone conversation was not mutually exclusive of her parent's ability to vicariously consent to the same). The relevant inquiry is instead whether, in light of his age and other relevant factors, M.A. had sufficient discretion at the time in question to freely, knowingly and voluntarily consent. *Cf. Allen v. State*, 44 So. 3d 525 (Ala. Crim. App. 2009) (seventeen-year-old minor had the capacity and ability to consent to search of parent's home where facts attendant to the encounter, including the child's age, maturity, and intelligence, indicated that the minor could exercise sufficient discretion to freely, knowingly, and voluntarily consent to the search and not merely acquiesce to a request of a police officer). In the present case, the Petitioner has failed to plead facts indicating that, in view of M.A.'s age, intelligence, maturity, or other circumstances existing at the time, he was in fact unable to freely, knowingly, and voluntarily give his consent to the recording of his conversation with the Petitioner. Accordingly, Petitioner has failed to satisfy his burden of pleading specific facts that if true would show that M.A.'s consent to the recording of his telephone conversation with the Petitioner was ineffective and that the tape recording was therefore improperly admitted into evidence. Ala. R. Crim. P. 32.3 and 32.6(b).
>
> Petitioner also appears to contend that the recording was inadmissible because it was obtained as a result of [] Lt. White improperly involving a minor in

---

[16] The Alabama Court of Criminal Appeals adopted the Rule 32 court's order denying Petitioner's Rule 32 petition. (Doc. 6-23 at 3).

an "undercover operation" that required him to perform a criminal act. Even assuming that such conduct on the part of the police would have warranted the exclusion of the tape recording from evidence, Petitioner has failed to plead facts indicating that M.A.'s involvement in the conversation constituted a criminal offense in violation of federal or State law. Accordingly, he has failed to satisfy his burden of pleading specific facts that if true would entitle him to relief on this claim. Ala. R. Crim. P. 32.3 and 32.6.

(Doc. 6-16 at 8-9).[17]

In light of the discrepancy between Petitioner framing his claim as one for prosecutorial misconduct (Doc. 16-7 at 8-12) and the Rule 32 court addressing this claim as one of trial court error, the undersigned would normally first determine whether the Rule 32 court's ruling on the claim constitutes a ruling on the merits of the *prosecutorial misconduct* claim such that its findings are entitled to the deferential review established by 28 U.S.C. § 2254(d). However, because Petitioner's arguments fail under *de novo* review, the court will bypass that discussion and use the less deferential standard of review. *See Bellizia v. Florida Dep't of Corr.*, 614 F.3d 1326, 1328 n.1 (11th Cir. 2010) ("While federal courts typically must give deference to state court adjudications of claims in a habeas petition, *see* 28 U.S.C. § 2254(d)(1), such deference is not required if the state court failed to the address the merits of a claim asserted by the petitioner.").

In short, the question is whether Petitioner's constitutional rights were violated when the State introduced an allegedly illegally obtained audio recording into evidence. Even assuming the introduction of an illegally obtained audio recording would constitute a constitutional violation in this case, a point of which the court is not convinced, Petitioner fails to show the audio recording at issue was illegally obtained.

---

[17] In a footnote, the Rule 32 court also found that to the extent Petitioner's claims might be premised on an alleged violation of the Electronic Communications Privacy Act of 1986, 18 U.S.C § 2510 *et seq.*, Petitioner failed to plead facts indicating that M.A.'s status as a minor foreclosed his ability to provide consent. (Doc. 6-16 at 9 n.2).

Petitioner relies on Alabama Code § 13A-3-22 and *Bartlett v. Alabama Alcoholic Beverage Control Bd.*, 654 So. 2d 1137 (Ala. 1993), for the proposition that "a minor [cannot] work with law enforcement in an undercover police operation without the express consent of the minor['s] parent or guardian." (Doc. 1 at 24). Alabama Code § 13A-3-22 states in whole:

> Unless inconsistent with other provisions of this article, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is required or authorized by law or by a judicial decree or is performed by a public servant in the reasonable exercise of his official powers, duties or functions.

In other words, this provision allows public servants to engage in conduct that would otherwise be criminal if doing so is required or authorized by law. In *Bartlett*, the Alabama Supreme Court addressed the procedural safeguards the Alabama Alcoholic Beverage Control Board should have in place for purposes of protecting the minor before the minor will be entitled the protection of § 13A-3-22. *Bartlett*, 654 So. 2d at 1143. One of those procedural safeguards is parental consent. *Id.* However, *Bartlett* does not stand for the proposition that parental consent is required before a minor cooperates with law enforcement in any investigation or undercover operation. And it certainly does not stand for the proposition that if a minor is involved in an undercover investigation without parental consent, such involvement constitutes grounds for suppression of any evidence gained as part of that investigation. Review of Alabama Code § 13A-3-22 and *Bartlett* show they do not support Petitioner's contention a minor cannot work with law enforcement absent parental consent. As such, he fails to demonstrate the audio recording was obtained in violation of Alabama law.

Petitioner also argues the recording constitutes a warrantless wiretap in violation of 18 U.S.C. § 2516(2). This argument is misguided. (Doc. 8 at 49-50). The recording was not generated from a wiretap or other type of surveillance requiring a warrant, rather it was a

recording made with the knowledge and consent of M.A.[18]   (Doc. 6-28 at 70-72).   18 U.S.C. § 2511(2)(c) and (d) ("(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.  (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."); *See United States v. Smith*, 918 F.2d 1551, 1558 (11th Cir. 1990) (no warrant is needed when a government informant consents to the recording of a conversation in which he participates).  Further, M.A.'s status as a minor does not alone preclude him from being able to

---

[18] From the testimony of Officer White:
   A.  I asked him would he be willing to call his father and record the conversation in an attempt to elicit any statements or confession or admission that this happened.
   Q.  Was M. willing to do so?
   A.  Yes, he was.
   Q.  And how did you arrange for this to happen?
   A.  He had his phone. . . . . [W]hat we did was put a microcassette recorder to his ear and held it there while he talked on the phone
   . . .
   Q.  How did you begin a tape recording of this nature?
   A.  Well, I described to him what it is that I'm asking him to do.  Again, I asked him for his permission.  I show him how the tape recorder works.  When we turned on the tape recorder, I asked him to state his name, who he is calling, what number he is calling and that he is authorizing me to record this conversation.  And he says that over the tape.  And then he dials the number and starts the conversation.
   Q.  Did you at any time give M. any indication that he had to do this?
   A.  No.
   Q.  Did he ever ask to leave or stop?
   A.  No.
(Doc. 6-28 at 70-72).
From the testimony of M.A.:
   Q.  And did you understand that the phone call was to be recorded?
   A.  Yes, ma'am.
   Q.  Did you agree to that?
   A.  Yes, I did.
   Q.  Were you forced to do that?
   A.  No, I wasn't
(Doc. 6-4 at 67).

consent. *See Bryant v. Mostert*, 636 F. Supp. 2d 1303, 1314-15 (M.D. Fla. 2009) (finding consent where the consenting party was a minor). Petitioner does not offer any evidence or argument to support a finding M.A. did not consent to the audio recording other than his status as a minor. Accordingly, Petitioner's argument that the audio recording violates 18 U.S.C. § 2516(2) must fail.

Because Petitioner fails to show the audio recording was illegally obtained, he cannot show the introduction of that recording by the prosecution constituted prosecutorial misconduct. Thus, Petitioner is not entitled to habeas relief on this claim.

### D.   Ineffective Assistance of Appellate Counsel

In his final claim for relief, Petition argues appellate counsel was ineffective when he failed to communicate with Petitioner during the pendency of his direct appeal, despite repeated efforts by Petitioner and his wife to contact appellate counsel. (Doc. 1 at 26; Doc. 8 at 52). Petitioner alleges appellate counsel "failed to provide effective assistance by only contacting [him] once throughout [the] appeal process." (Doc. 8 at 51). The only communication mentioned by Petitioner is a letter appellate counsel sent him during the direct appeal stating he would not amend the appeal to include certain issues. (Doc. 8 at 52). Petitioner does not mention what those issues were. The State argues this claim is procedurally defaulted because Petitioner failed to exhaust it by presenting it through one complete round of state court review. Regardless of whether the claim is procedurally defaulted, it fails on the merits.

To establish an ineffective assistance of appellate counsel claim, Petitioner must show: "(1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Florida Dep't of Corr.*, 537

F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins,* 528 U.S. 259, 285-86, (2000) and *Strickland v. Washington,* 466 U.S. 668 (1984)).

Here, Petitioner fails to show he was prejudiced by appellate counsel's lack of communication with him.  The thrust of Petitioner's argument is as follows: "[appellate counsel's] deficient performance by not contacting me throughout my direct appeal process prejudiced me by not being allowed to [be] a part of and make informed decisions concerning my appeal." (Doc. 8 at 52).  Noticeably absent from this conclusory statement is any assertion had Petitioner been involved in the decision-making process for his appeal, he would have made different decisions than appellate counsel and those decisions would have resulted in his conviction being overturned.  Because he fails to allege that but for appellate counsel's lack of communication he would have been successful on appeal, Petitioner cannot establish he was prejudiced by appellate counsel's allegedly deficient performance.  *See Hill v. Lockhart,* 474 U.S. 52, 60 (1985) (finding that a petitioner failed to satisfy the *Strickland* requirement of prejudice when he did not allege there would have been a different outcome had his attorney's performance not been deficient).  As such, Petitioner's ineffective assistance of appellate counsel claim is due to be denied.[19]

## III.   CONCLUSION

For the reasons discussed above, the Petition is due to be denied, and this case is due to be dismissed with prejudice.  The court will enter an appropriate order.

---

[19] Because the undersigned finds Petitioner was not prejudiced, the court need not address the performance prong of the analysis. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010).

DONE this **20**ᵗʰ day of March, 2015.

_____